**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **AMERICAN CIVIL LIBERTIES UNION**<br>915 15th Street, N.W., 7th Floor<br>Washington, DC 20005,<br><br>           Plaintiff,<br><br>     v.<br><br>**DEPARTMENT OF JUSTICE**<br>950 Pennsylvania Avenue, N.W.<br>Washington DC 20530,<br><br>           Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)  Civil Action No.<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

(1)  This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552; and the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202.  Plaintiff seeks injunctive and declaratory relief to compel defendant Department of Justice to disclose requested records.

### Jurisdiction and Venue

(2)  This court has both subject matter jurisdiction over this action and personal jurisdiction over the parties pursuant to 5 U.S.C. § 552(a)(4)(B).  This court also has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. §§ 2201(a) & 2202.  Venue lies in this district under 5 U.S.C. § 552(a)(4)(B).

### The Parties

(3)  Plaintiff American Civil Liberties Union ("ACLU") is a nationwide, nonprofit, nonpartisan organization dedicated to protecting human rights and civil rights in the United States.  It is the largest civil liberties organization in the country, with offices in 50 states and

over 500,000 members. The ACLU is dedicated to holding the United States government accountable with respect to the rights of prisoners guaranteed by the U.S. Constitution and by universal human rights principles.  Although the ACLU has been involved in prison reform for more than half a century, in 1972 the organization consolidated its various prisoners' rights efforts around the United States into the National Prison Project ("NPP").  The NPP promotes a fair and effective criminal justice system in which incarceration is used only as a last resort, and its purpose is to prepare prisoners for release and a productive, law-abiding life at the earliest possible time.  Through litigation, advocacy, and public education, the NPP works to ensure that conditions of confinement are consistent with health, safety, and human dignity, and that prisoners retain all rights of free persons that are not inconsistent with incarceration.  The NPP's current docket includes class action civil rights suits on behalf of prisoners in thirteen states and the U.S. Virgin Islands.

(4)  Defendant Department of Justice ("DOJ") is a department of the Executive Branch of the United States Government.  The Federal Bureau of Prisons ("BOP") is a component of defendant DOJ.  Defendant DOJ is an "agency" within the meaning of 5 U.S.C. § 552(f).

### Background

(5) In December 2014, the Executive Summary of the Senate Select Committee on Intelligence Committee Study of the Central Intelligence Agency's Detention and Interrogation Program ("Senate torture report") was declassified. One portion of the Senate torture report described a Central Intelligence Agency ("CIA") detention site in Afghanistan code-named COBALT. According to the report, detainees at COBALT were kept in complete darkness, shackled to the walls of their cells, and given only a bucket for human waste. According to a senior interrogator quoted in the report, one detainee "as far as we could determine" had been

chained to the wall in a standing position for 17 days. The CIA's chief of interrogations described COBALT as "the closest thing he has seen to a dungeon" and said that some of the detainees "literally looked like a dog that had been kenneled," shrinking away when their cell doors were opened. Another senior CIA official called the detention facility an "enhanced interrogation technique" in itself. At one point, the CIA Renditions Group concluded that COBALT's "baseline conditions" involved so much deprivation that any further deprivation would have limited impact on the agency's interrogations.

(6) The Senate torture report states that given the CIA's lack of experience operating detention facilities, the agency decided to turn to Defendant DOJ—and, in particular, to the Federal Bureau of Prisons ("BOP")—to provide such specialized expertise. BOP is the federal agency responsible for the federal prison system, which has custody of approximately 200,000 people on an average day. BOP describes itself as "a model of outstanding public administration, and as the best value provider of efficient, safe and humane correctional services and programs in America."

(7) The Senate torture report states that In November 2002, a BOP inspection team traveled to Afghanistan and conducted a multi-day assessment of COBALT that included visiting the facility. At the end of the BOP team's visit to COBALT, detainee Gul Rahman died from apparent hypothermia after being shackled to the wall of his cell overnight, naked except for a sweatshirt.

(8) The BOP team provided assessments, recommendations, and training for the staff at COBALT. On December 4, 2002, BOP staff met with CIA officials at CIA headquarters. According to the Senate torture report, the BOP staff commented that they were "WOW'ed" by the profound sensory deprivation at COBALT. They told the CIA that in spite of this sensory

deprivation, their collective assessment was that "the detainees were not being treated in humanely [sic]." Despite the use of buckets for human waste, they also concluded that the facility was "sanitary" and that guards "did not mistreat" the detainees. There is no indication in the report that the BOP team commented in any way on the death of Gul Rahman during its visit.

(9) According to the Senate torture report, after BOP approved the conditions of confinement at COBALT as "not in humane," the CIA continued to detain people at COBALT. CIA officers remarked that the BOP's assistance improved day-to-day operations at COBALT and made it a "more secure and safer working environment" for officers. CIA records indicate that COBALT held a total of 64 detainees between September 2002 and its closure at some point in 2004. That means that of the four detention facilities in Afghanistan described in the Senate torture report, COBALT held the most detainees.

(10) Despite the CIA's declassification of these descriptions, BOP has never publicly acknowledged its role in assisting the CIA's detention activities at COBALT or any other CIA detention facility.

**Plaintiff's FOIA Request and Defendant's Response**

(11) By letter to BOP dated January 13, 2015, plaintiff requested under the FOIA copies of agency records. Specifically, plaintiff requested records pertaining to BOP's involvement with a detention facility located in Afghanistan and identified by the code-name COBALT in the Executive Summary of the Senate Select Committee on Intelligence Committee Study of the Central Intelligence Agency's Detention and Interrogation Program. Plaintiff described the records requested as follows:

> 1. Any and all COMMUNICATIONS relating to DETENTION SITE COBALT, between [BOP] and any other Federal agency or agencies, from January 1, 2002 to January 1, 2005.

2.  Any and all COMMUNICATIONS relating to DETENTION SITE COBALT, between BOP personnel, from January 1, 2002 to January 1, 2005.

3.  Any and all DOCUMENTS identifying BOP personnel who visited DETENTION SITE COBALT on or about November 2002.  For convenience of reference, these activities are described on page 60 of Exhibit A.[1]

4.  Any and all DOCUMENTS relating to any and all visits, meetings, inspections, assessments, recommendations, or training conducted by BOP personnel relating to DETENTION SITE COBALT on or about November 2002.  For convenience of reference, these activities are described on page 60 of Exhibit A.

5.  Any and all DOCUMENTS relating to any and all briefings or meetings between BOP and Central Intelligence ("CIA") personnel relating to DETENTION SITE COBALT on or about December 2002.  For convenience of reference, these activities are described on page 60 of Exhibit A.

6.  Any and all DOCUMENTS relating to the death of a detainee at DETENTION SITE COBALT on or about November 2002.  For convenience of reference, this death is described as occurring "at the end of the Federal Bureau of Prisons visit to the CIA detention site" in Footnote 297 of Exhibit A, and the circumstances of the death are described on pages 54-55 and 59-60 of Exhibit A.

(12)  In its letter to defendant dated January 13, 2015, plaintiff requested a waiver of any search, review, or duplication fees associated with its FOIA request pursuant to 5 U.S.C. § 552(a)(4)(A) and 6 C.F.R. § 5.11.  Plaintiff further noted that the ACLU qualifies as a "representative of the news media" and that the records were not being sought for commercial use.  Accordingly, plaintiff stated that any fees assessed for the processing of its requests should be "limited to reasonable standard charges for document duplication" pursuant to 5 U.S.C. § 552(a)(4)(A)(ii)(II) and 6 C.F.R. § 5.11(d).

(13)  By letter to plaintiff dated January 15, 2015, BOP acknowledged receipt of plaintiff's FOIA request and assigned it "FOIA/PA Request Number: 2015-02312."

---

[1] Plaintiff attached to its FOIA request as Exhibit A relevant excerpts of the Senate Select Committee on Intelligence Committee Study of the Central Intelligence Agency's Detention and Interrogation Program.

(14)  By letter to plaintiff dated April 22, 2015, BOP responded to plaintiff's FOIA request.  BOP asserted that it had conducted a search for responsive records and that "no records were found."  BOP advised plaintiff of its right to appeal that determination to defendant DOJ's Office of Information Policy ("OIP").

(15)  By letter to OIP dated June 11, 2015, plaintiff appealed BOP's determination that no records responsive to plaintiff's FOIA request could be located.  Plaintiff based its appeal on the following grounds:  1) BOP conducted an inadequate search; and 2) if BOP found records but falsely stated to the ACLU that no records exist, it violated FOIA by withholding responsive documents without justification and without invoking an exemption, the *Glomar* response doctrine, or 5 U.S.C. § 552(c).

(17)  By letter to plaintiff dated July 15, 2015, OIP acknowledged receipt of plaintiff's FOIA appeal and assigned it number AP-2015-04543.

(18)  By letter to plaintiff dated September 10, 2015, OIP responded to plaintiff's FOIA appeal.  OIP informed plaintiff that it was "affirming BOP's action on your request."  OIP further stated that, "BOP informed you that it could locate no responsive records subject to the FOIA in its files," and that OIP "determined that BOP's action was correct and that it conducted an adequate, reasonable search for [the requested] records."  OIP advised plaintiff of its right to "file a lawsuit in federal district court in accordance with 5 U.S.C. § 552(a)(4)(B)."

(19)  It is not credible that BOP has no records pertaining to the visit of a team of its employees to a detention facility in Afghanistan between 2002 and 2004.

**CAUSE OF ACTION**

**Violation of the Freedom of Information Act for
Wrongful Withholding of Agency Records**

(20)  Plaintiff repeats and realleges paragraphs 1-19.

(21)  Plaintiff has exhausted the applicable and available administrative remedies with respect to defendant's processing of plaintiff's FOIA request.

(22)  Defendant has wrongfully withheld the requested records from plaintiff.

(23)  Plaintiff is entitled to injunctive and declaratory relief with respect to the release and disclosure of the requested documents.

### Requested Relief

WHEREFORE, plaintiff prays that this Court:

A.  Order defendant Department of Justice to disclose all non-exempt records responsive to plaintiff's FOIA request immediately, with all processing fees waived;

B.  Issue a declaration that plaintiff is entitled to disclosure of the requested records;

C.  Award plaintiff its costs and reasonable attorneys fees incurred in this action; and

D.  Grant such other relief as the Court may deem just and proper.

Respectfully submitted,

DAVID L. SOBEL, D.C. Bar No. 360418
5335 Wisconsin Avenue, N.W., Suite 640
Washington, DC 20015
(202) 246-6180

CARL TAKEI, D.C. Bar No. 987672
AMERICAN CIVIL LIBERTIES UNION
 NATIONAL PRISON PROJECT
915 15th Street, N.W., 7th Floor
Washington, DC 20005
(202) 393-4930

ARTHUR B. SPITZER, D.C. Bar No. 235960
American Civil Liberties Union
 of the Nation's Capital
4301 Connecticut Avenue, N.W., Suite 434
Washington, D.C. 20008
(202) 457-0800

*Counsel for Plaintiff*